OPINION
Appellant, Michael T. Protheroe, Sr., appeals from the judgment of conviction and imposition of sentence rendered by the Trumbull County Court of Common Pleas after he pled guilty to one count of aggravated robbery with a gun specification. For the reasons that follow, we affirm the judgment of the trial court.
The facts pertinent to this appeal are as follows. On July 24, 1997, the Trumbull County Grand Jury indicted appellant on one count of aggravated robbery, an aggravated felony of the first degree in violation of R.C. 2911.01(A)(1) (B). The indictment also contained a specification, pursuant to R.C. 2941.14.5, that a firearm was used during the commission of the offense. The indictment stemmed from allegations that appellant participated in the armed robbery at a branch of the Trumbull Savings and Loan on or about July 15, 1997, in Warren, Ohio. To the above charge, appellant entered an initial plea of not guilty.
On August 29, 1997, appellant, with counsel, withdrew his initial plea of not guilty and entered a plea of guilty to the one count of aggravated robbery with the firearm specification as charged in the indictment. Prior to accepting appellant's plea, the trial court engaged in an extensive exchange with appellant to determine if he was entering into his plea voluntarily with an understanding of the effects of his plea including the constitutional rights he was waiving, the nature of the charge, and the possible penalties appellant could receive including his eligibility for community controlled sanctions. Specific to the arguments made on appeal, the trial court informed appellant of the following:
 "THE COURT: Before the Court can accept [a guilty] plea, I have to be satisfied that you understand all of your Constitutional Rights. How old are you?
"[APPELLANT]: Twenty-seven.
"THE COURT: How far did you get in school?
"THE DEFENDANT: Twelfth Grade.
"THE COURT: Can you read and write the English language?
"[APPELLANT]: Yes.
 "THE COURT: Are you currently taking any drugs, alcohol, or medication that would cause you not to be able to understand what is going on here today?
"[APPELLANT]: No.
"* * *
 "THE COURT: This specific case has a potential penalty of 3, 4, 5, 6, 7, 8, 9 or 10 years, and up to a $20,000 fine, do you understand that?
"[APPELLANT]: Yes.
 "THE COURT: Also, it has a specification, gun specification, that carries with it three years actual incarceration and, by law, any sentence that you get in this case, the three-year gun specification is served prior to and consecutive to that sentence, do you understand that?
"[APPELLANT]: Yes.
 "THE COURT: Okay. There may be additional costs here, including costs of the case, restitution, financial sanctions, do you understand that?
"[APPELLANT]: Yes.
 "THE COURT: Now, because of the nature of this case, there is a mandatory post release control period of five years in this matter, do you understand that?
"[APPELLANT]: Yes.
 "THE COURT: The charges that are involved in this plea are aggravated robbery, a felony of the first degree, a violation of Section 2911.01(A)(1); and a gun specification is 2941.14.5, do you understand that?
"[APPELLANT]: Yes.
 "THE COURT: What the State of Ohio would have to prove are the following elements: That you did, in Trumbull County, Ohio, in attempting or committing a theft offense, as defined in ORC 2913.01, or in fleeing immediately after such attempt or offense, have a deadly weapon, on or about your person or under your control, and you did display the weapon, brandish it, indicated that you possessed it or used it. Do you understand that?
"[APPELLANT]: Yes.
 "THE COURT: And for the specification, the elements would be that pursuant to 2941.14.5, that you did and with co-defendant VonBergen, at the time of the commission of the crime of aggravated robbery, have a firearm on or about your person or under your control; a firearm being defined in Section 2923.11 of the Ohio Revised Code; that it was displayed, brandish[ed], or indicated that you possessed it or a co-defendant possessed it, the firearm, and it was used to facilitate the offense of aggravated robbery.
"[APPELLANT]: Yes.
"THE COURT: Do you understand that?
"[APPELLANT]: Yes.
 "THE COURT: Do you also understand that this case, because of the degree of felony and gun specification combination, you are not eligible for probation or what is now called community controlled sanctions, do you understand that?
"[APPELLANT]: Yes.
 "THE COURT: That you are, at the time of sentencing, you are going to be sentenced for a period of incarceration, do you understand that?
"[APPELLANT]: Yes.
"* * *
 "THE COURT: I am holding in front of me this document, it's called Finding on Guilty Plea to the Indictment. Have you gone over this with your attorney?
"[APPELLANT]: Yes.
"THE COURT: Do you understand what's contained herein?
"[APPELLANT]: Yes.
 "THE COURT: There is a place here that indicates Defendant, is that your signature?
"[APPELLANT]: Yes, it is.
"THE COURT: Did you sign this freely and voluntarily?
"[APPELLANT]: Yes.
 "THE COURT: Were any threats or promises made to you to cause you to sign this document?
"[APPELLANT]: No.
 "THE COURT: Are you satisfied that your attorney has done what he can for you on behalf of you in this case?
"[APPELLANT]: Yes.
 "THE COURT: [Defense counsel], are you satisfied that your client understands what is contained in this document and what happens as a waiving of his Constitutional Rights and plea in this matter?
"[DEFENSE COUNSEL]: Yes, I am, Your Honor.
"THE COURT: To the indictment, how do you plead?
"[APPELLANT]: Guilty.
As alluded to in the court's colloquy with appellant, the record contains a document entitled "FINDING ON GUILTY PLEA TO INDICTMENT" wherein appellant acknowledged that he was withdrawing his former plea of "not guilty" and entering a plea of guilty to the crime charged in the indictment. Specifically, appellant signed his name to this document stating that he was pleading guilty to AGGRAVATED ROBBERY (F1) (ORC2911.01[A][1]) WITH GUN SPECIFICATION (ORC 2941.14.5). The elements of these offenses were again explained to appellant in language similar to that used in the court's colloquy with the accused. Appellant also acknowledged that he faced a prison term from "3, 4, 5,6, 7, 8, 9, or 10 years and $20,000 fine" as well as a prison term related to the "SPECIFICATION: 3 yearsactual incarceration to be served consecutive to andprior to principal sentence." Appellant further acknowledged that the prison term was mandatory and that both the State and appellant agreed to recommend to the court a four-year sentence "plus 3 years mandatory onthe gun specification."
The "FINDING ON GUILTY PLEA TO INDICTMENT" also informed appellant of the following:
 "[A] period of control or supervision by the Adult Parole Authority after release from prison is mandatory in this case. The control period may be a maximum of 5 years. A violation of any post-release control rule or condition can result in a more restrictive sanction while released, an increased duration of supervision or control, up to the maximum set out above and/or re-imprisonment even though you have served in (sic) entire stated prison sentence imposed upon you by this court for all offenses set out above. Re-imprisonment can be imposed in segments of up to 9 months but cannot exceed a maximum of ~ of the total term imposed for all of the offenses set out above. * * *"
The record further contains a document signed by appellant and entitled "NOTICE (PRISON IMPOSED)" that again informed him that he will "have a period of post-release control for 5 years following [his] release from prison." This "NOTICE" also explained the possible penalties he faced should he violate any post-release control sanctions.
On September 9, 1997, following a presentence investigation, the trial court followed the parties' joint recommendation and sentenced appellant to four years incarceration on the aggravated robbery charge and a mandatory three year term of incarceration on the gun specification to be served prior to and consecutive to the principal sentence. Appellant filed a delayed appeal from this judgment pursuant to App.R. 5(A) on March 23, 1998. This court subsequently granted leave to appeal and appellant now asserts the following three assignments of error:
 "[1.] THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE APPELLANT, BY ACCEPTING A GUILTY PLEA WITHOUT FIRST DETERMINING WHETHER THE APPELLANT UNDERSTOOD THE NATURE OF THE CHARGES AGAINST HIM.
 "[2.] THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY FAILING TO HAVE THE APPELLANT ENTER A GUILTY PLEA TO THE FIREARMS SPECIFICATION SEPARATE AND APART FROM THE UNDERLYING OFFENSE.
 "[3.] THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE APPELLANT, BY ACCEPTING A GUILTY PLEA WITHOUT FIRST EXPLAINING TO THE APPELLANT THE FULL MAXIMUM PENALTY INVOLVED INCLUDING THE MATTER OF POST-RELEASE CONTROL."
In the first assignment of error, appellant contends that the trial court erred in accepting his guilty plea to the charge of aggravated robbery with the firearm specification without first determining whether he understood the nature of the charges against him. Specifically, appellant asserts that the trial court did not comply with Crim.R. 11(C)(2) that provides as follows:
 "In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
 "(a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
 "(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty of no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.
 "(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself."
The Supreme Court of Ohio and this court have held that strict compliance with Crim.R. 11(C) is required when a trial court is informing an accused regarding the Fifth Amendment privilege against self-incrimination, the right to trial by jury, and the right to confront one's accusers. State v. Nero (1990),56 Ohio St.3d 106, 107; State v. Rucker (Apr 3, 1998), Ashtabula App. No. 96-A-0051, unreported, at 5-6. Substantial compliance with Crim.R. 11(C) is all that is required with respect to the other items set forth in the rule. Nero at 108; Rucker at 5-6. In order to satisfy the requirement of substantial compliance, a reviewing court considers the totality of the circumstance to determine if the defendant subjectively understood the implications of the plea and the rights that were waived. Rucker
at 6. Additionally, "`a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect.'" Id, quotingNero at 108.
In the present case, appellant does not assert that the trial court failed to inform him of his rights regarding the privilege against self-incrimination, the right to a trial by jury, or the right to confront his accusers. Thus, this court will not review the trial court's Crim.R. 11(C) colloquy with the accused under the heightened standard of strict compliance. In the first assignment of error, appellant does not dispute that the trial court discussed with appellant the elements of the offense to which he was pleading guilty, one count of aggravated robbery with a firearm specification. Rather, appellant asserts the trial court failed to ascertain whether he understood the meaning behind the elements of the offense such as the terms "theft offense," "deadly weapon," and "firearm."
It is not always necessary to explain all of the elements of the crime, as long as the trial court can make a determination from the totality of the circumstances that the defendant understands the charge. State v. Rainey (1982), 3 Ohio App.3d 441,442. In this case, during the Crim.R. 11 colloquy between the trial court and the accused, appellant informed the court that he had twelve years of primary education with the ability to read and write the English language. The trial court then informed appellant as to the elements of the crime to which he was pleading guilty, to wit: aggravated robbery with a firearm specification. When specifically asked by the trial court if he understood said elements, appellant responded in the affirmative. Under these circumstances, it was not necessary for the trial court to "define" the individual elements of the crime to which he was pleading guilty. Applying the totality of circumstances, appellant's argument that he did not understand what a theft offense was or whether a firearm may constitute a deadly weapon is specious.
Furthermore, appellant was sentenced to a term of incarceration that conformed with the recommendation suggested by the prosecutor and appellant's trial counsel. Appellant received the benefit of the plea bargain he entered and has failed to establish a prejudicial effect from any alleged "defect" in the trial court's Crim.R. 11 colloquy in this respect. Appellant's first assignment of error is without merit.
In the second assignment of error, appellant asserts that the trial court erred in failing to have him enter a guilty plea to the firearm specification separate and apart from the underlying offense of aggravated robbery. This court has previously held that a trial court satisfies the independent plea requirement so long as the accused is informed, as was done in this case, as to the elements and potential penalties for both the specification and the underlying charge. State v. McKee (June 19, 1998), Trumbull App. No. 97-T-0036, unreported, at 10-11. Appellant's second assignment of error is without merit.
In the third assignment of error, appellant contends that the trial court failed to inform him of the maximum penalties involved with his guilty plea. Specifically, appellant asserts that he was not properly informed as to the possibility of serving additional jail time for violation of a post-release control sanction that could increase his maximum sentence on the aggravated robbery charge to fifteen years, not the ten years as stated by the trial court.
R.C. 2967.28(B)(1) provides that for each sentence applicable to a prison term for a felony of the first degree, the offender shall be subject to a five-year period of post-release control as administered by the adult parole authority. If an offender violates a post-release control provision, the offender is subject to more restrictive sanctions including the possibility of an increased prison term. R.C. 2967.28(F)(3) provides that "[t]he period of a prison term that is imposed as a post-release control sanction under this division shall not exceed nine months, and the maximum cumulative prison term for all violations under this section shall not exceed one-half of the stated prison term originally imposed upon the offender as part of this sentence."
The Eighth Appellate District, in State v. Moore (Aug. 27, 1998), Cuyahoga App. No. 73899, unreported, has held that a trial court is not required to inform an accused during the Crim.R. 11 colloquy as to any possible outcomes that may arise from a guilty plea, such as an increased prison sentence for a violation of a post-release control provision, that do not have an effect on the sentence at the time the plea was entered. However, R.C.2929.19(B)(3)(c) (e) require a trial court to "notify" an offender who is being sentenced to a first degree felony that a period of post-release control will be imposed upon the offender's release from prison and that, for a violation of a post-release control provision, the adult parole authority may impose increased sanctions including a new prison term of up to nine months per violation. R.C. 2943.032(E) further states that the trial court "shall inform the defendant personally" regarding these enhanced penalties should the offender violate the conditions of a post-release control sanction.
In the current case, it is apparent that the trial court informed appellant personally that "there is a mandatory post release control period of five years in this matter." It is equally apparent that the trial court did not explain the possible additional penalties that appellant could face for a violation of said post-release control sanctions. Instead, appellant's signature appears on two documents wherein these possible sanctions were explained to him. The failure of the trial court to personally inform him of these penalties, however, only results in a failure to notify appellant about a nonconstitutional right. Therefore, we must review the totality of the circumstances to determine whether the trial court substantially complied with the mandate of Crim.R. 11 and the resulting prejudice, if any, from the trial court's colloquy with appellant.
In the present case, the totality of the circumstances indicate that appellant was informed on at least two occasions, in writing, about the penalties for violating a post-release control sanction. Appellant further acknowledged at his change of plea hearing that he had read and understood one of the forms submitted to him explaining the penalties associated with a violation of a post-release control sanction. Moreover, appellant does not assert that he would have withdrawn his plea and demanded a trial if he had been personally informed by the trial court about said penalties. Consequently, appellant's third assignment of error is without merit.
Based on the foregoing, the judgment of the trial court is affirmed.
FORD, P.J., NADER, J., concur.