OPINION
Appellant, Travis Cantrell, appeals his conviction on two counts of aggravated vehicular homicide in violation of R.C. 2903.06, one count of failure to stop after an accident in violation of R.C. 4549.02, and one count of driving under the influence in violation of R.C. 4511.19. (We note that the sentencing entry gives the wrong statute section, but correctly states the name of the offense.) Cantrell's conviction was the result of a negotiated plea agreement.
The Franklin County Court of Common Pleas sentenced Cantrell to six years' incarceration on each of the aggravated-vehicular-homicide counts, twelve months' incarceration on the failure-to-stop count, and six months' incarceration on the driving-under-the-influence count. The sentences were made consecutive except for the one imposed for the failure to stop.
On appeal, Cantrell raises two assignments of error, claiming that (1) his guilty plea was not knowingly, intelligently and voluntarily made, and (2) the trial court erred by imposing consecutive sentences.
Cantrell killed two people when he was driving his car under the influence of alcohol. The two victims were on a motorcycle stopped at a red light, talking to people in the car in the adjacent lane. Cantrell's car swerved into the motorcycle's lane of traffic and hit the motorcycle. The impact threw the motorcycle's passenger onto Cantrell's car, her body striking the windshield before landing on the ground. As Cantrell's car continued forward, the motorcycle and its driver were forced along with it. When the motorcycle broke free from the car, the car ran over the driver. Both victims died at the scene.
Cantrell left the scene with his car's airbags deployed, its hood up, its windshield broken, and one front tire flat. In order to see, Cantrell had to drive with his head extended out the driver's-side window. Cantrell finally drove into a ditch, where he abandoned the car and ran to a gas station, asking bystanders for a ride.
A witness identified Cantrell to a police detective who had arrived at the scene. The detective smelled a strong odor of alcohol on Cantrell's breath and attempted to arrest him. But Cantrell refused to place his hands behind his back and threatened the detective. When another police officer arrived, Cantrell ran away. He was caught and placed in a cruiser where he stated that he had run because he had been drinking. He failed field sobriety tests and had a blood alcohol concentration of .209.
In his first assignment of error, Cantrell contends that the trial court failed to substantially comply with the nonconstitutional requirements of Crim.R. 11 by neglecting to do the following: (1) inform him that his plea to aggravated vehicular homicide would result in a mandatory prison term; (2) discuss the elements of the lesser-included offenses of aggravated vehicular homicide; (3) inform him that his sentences could be consecutive; and (4) specify that he was waiving the right to contest any pre-trial and trial motions on appeal.
Cantrell's first assignment of error requires us to determine whether the trial court substantially complied with the nonconstitutional requirements of Crim.R. 11.[1] "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving. * * * Furthermore, a defendant who challenges his guilty plea on the basis that it was not knowingly, intelligently, and voluntarily made must show a prejudicial effect. * * * The test is whether the plea would have otherwise been made."[2]
Our review of the record demonstrates that, prior to sentencing, the state presented the facts of the case. The trial court asked Cantrell's counsel if he wanted to add any facts. His counsel responded, "No * * * I have spent time with Mr. Cantrell on this matter, considerable time. I thoroughly investigated the facts, and had the investigator talk to some witnesses. We have no substantial additions or alterations." The court then asked Cantrell if he was guilty of "committing these crimes," to which he responded, "Yes."
The court further asked Cantrell's counsel if counsel had complied "with the obligations of representation that are set forth in the guilty plea form." Counsel responded, "I believe I have, your Honor. Travis understands everything. The case has been thoroughly investigated."
With respect to the aggravated-vehicular-homicide counts, the court informed Cantrell that he could be placed in prison for a minimum of three years and a maximum of eight years.
Cantrell now asserts that he did not understand the nature of the charges against him. As a general rule, this court has determined that a guilty plea is made with an understanding of the nature of the charges when: (1) a defendant is addressed in court and informs the court that he understands what he is pleading guilty to; (2) his signed guilty plea states that he has reviewed the law and the facts with his counsel; and (3) counsel advises the court that he has reviewed the facts and the law with his client and that his client has read the plea form.[3]
"[F]or a trial court to determine that a defendant in a criminal case understands the nature of the charge to which he was entering a guilty plea, it is not always necessary that the trial court advise the defendant of the elements of the crime, or to specifically ask the defendant if he understands the charge, so long as the totality of the circumstances are such that the trial court is warranted in making a determination that the defendant understands the charge."[4] "Where the charge to which a defendant pleads guilty is a lesser included offense of the crime with which he was originally charged, so that the elements of the two crimes are similar, it is not difficult to find circumstances" to demonstrate the appropriate understanding.[5]
We conclude that the record in this case, including the recitation of the facts, the plea agreement, counsel's uncontradicted comments, and Cantrell's admission that he was guilty of committing the crimes, sufficiently demonstrates that he entered his guilty plea with an understanding of the nature of the charges.
Cantrell also argues that he "could have" misinterpreted his maximum sentence as a result of the trial court's failure to address the potential for consecutive sentences. This court has rejected this argument, holding that the failure to inform a defendant that sentences may be imposed consecutively does not render a plea involuntary.[6]
As to Cantrell's argument regarding the waiver of appellate review, Crim.R. 11(C) does not require that a defendant be informed of what appeal rights he is waiving. Further, Cantrell has not demonstrated how this alleged error prejudiced him. He obviously understood that he could appeal his conviction, because he has done so.
Cantrell also argues that his plea was not voluntary because he did not know that he was ineligible for community-control sanctions. In this respect, the trial court informed Cantrell that the aggravated-vehicular-homicide counts could result in imprisonment for a minimum of three years or a maximum of eight years. It also informed Cantrell that, on the counts that involved imprisonment for up to eight years (the aggravated-vehicular-homicide counts), he would have a mandatory three-year period of post-release supervision.
We are satisfied that the trial court substantially complied with Crim.R. 11(C)(2)(a) in that it gave the minimum sentence and informed Cantrell of what would occur after imprisonment. The minimum sentence connoted that there would be no community control in lieu of prison. Even if we assume otherwise, Cantrell has demonstrated no prejudice.[7]
As a result of the plea, the aggravated-vehicular-homicide charges, first-degree felonies were amended to second-degree felonies, and a felony count of tampering with evidence and a driving-under-the-influence charge were dismissed.
Cantrell's first assignment of error is overruled.
In his second assignment of error, Cantrell argues that the trial court failed to make the requisite findings necessary for the imposition of consecutive sentences. The law concerning the imposition of consecutive sentences is clear:
 Pursuant to R.C. 2929.14(E)(4), the court may impose consecutive sentences for conviction of multiple offenses if the court finds that consecutive sentences are ["]necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:
* * *
 (b) the harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.["]
* * *
 Furthermore, when a trial court imposes consecutive sentences under R.C. 2929.14, it must also comply with R.C. 2929.19(B)(2)(c) which requires that the sentencing court "make a finding that gives its reasons for selecting the sentences imposed * * *." The requirement that a court give its reasons for selecting consecutive sentences is separate and distinct from the duty to make the findings required by R.C. 2929.14(E)(4). * * * Thus, after the court has made the required findings under R.C. 2929.14, it must then justify those findings by identifying specific reasons supporting the imposition of consecutive prison terms. * * * A trial court's failure to sufficiently state its findings and reasons requires remand for resentencing. * * *[8]
At the beginning of the sentencing hearing in this case, the trial court discussed generally the purposes of sentencing. It said, "The consequences of Mr. Cantrell's acts resulted in the taking of two lives, of two innocent people, who in no way provoked or contributed to their deaths. There is no more serious crime than the crime involving the loss of life. There was no justification for the actions of Mr. Cantrell." It then discussed the statutory factors relevant to sentencing generally.
Before imposing the consecutive sentences, the trial court stated that the purpose of consecutive sentences was to protect the public or to punish the offender. It also stated that the sentences could not be disproportionate to the seriousness of the offender's conduct and the danger the offender posed to the public. It next stated that the only statutory standard "that lies in this particular case" was that the harm was so great that a single prison term would not adequately reflect the seriousness of Cantrell's conduct. The trial court's comments were inadequate for the imposition of consecutive sentences. Although it stated the purpose of consecutive sentences and what a trial court was required to find, it failed to find that consecutive sentences were necessary to punish Cantrell or to protect the public, and that consecutive sentences were not disproportionate to the seriousness of Cantrell's conduct and to the danger he posed to the public. It also failed to give its reasons for selecting consecutive sentences under R.C. 2929.19(B)(2)(c). Certainly, killing two people instead of one is an appropriate factor in a discussion of the seriousness of the offender's conduct or the proportionality of the sentence but the court must still make the specific findings mandated by the sentencing statute. Thus, we are constrained to sustain Cantrell s second assignment of error.
Cantrell's first assignment of error is overruled, and his second assignment of error is sustained. Accordingly, we vacate his sentence and remand this case for resentencing in compliance with R.C. 2929.14(E)(4) and 2929.19(B)(2)(c). In all other respects, the trial court's judgment is affirmed.
Judgment affirmed in part, and reversed in part, sentence vacated, and cause remanded for resentencing.
BRYANT and PETREE, JJ., concur.
PAINTER, J., of the First Appellate District, sitting by assignment in the Tenth Appellate District.
[1] See State v. Nero (1990), 56 Ohio St.3d 106, 564 N.E.2d 474, 475, syllabus.
[2] See State v. Nero at 108, 564 N.E.2d at 476, citations deleted.
[3] See State v. Ellis (June 20, 1996), Franklin App. No. 95APA10-1399, unreported.
[4] See State v. Rainey (1982), 3 Ohio App.3d 441, paragraph one of the syllabus, 446 N.E.2d 188, 189; State v. Jordan (Mar. 2, 1999), Franklin App. No. 96APA11-1517, unreported.
[5] See State v. Rainey, at 441, paragraph two of the syllabus,446 N.E.2d at 189.
[6] See State v. Ellis, supra, citing State v. Johnson (1988),40 Ohio St.3d 130, 532 N.E.2d 1295, syllabus.
[7] See State v. Hagerman (Mar. 4, 1997), Franklin App. No. 96APA08-1125, unreported; State v. Ellis, supra.
[8] See State v. Norvett (Dec. 31, 2001), Franklin App. No. 01AP-572, unreported.